IN THE MATTER OF THE DEBARMENT OF TRIANGLE PWC,
INC. BY THE DIVISION OF BUILDING AND
CONSTRUCTION.

Superior Court of New Jersey
Appellate Division

Submitted June 1, 1981—Decided July 1, 1981.

Before Judges SEIDMAN, ANTELL and LANE.

*Hooley, Perselay, Butler & Kelly*, attorneys for appellant
(*Neale F. Hooley*, on the brief).

*James R. Zazzali,* Attorney General of New Jersey, attorney for respondent (*Stephen Skillman,* Assistant Attorney General, of counsel; *John J. Degnan,* former Attorney General of New Jersey, and *Joseph L. Yannotti,* Deputy Attorney General, on the brief).

PER CURIAM.

Triangle PWC, Inc. (Triangle) appeals from a determination by the Director of the Division of Building and Construction (DBC) in the Department of the Treasury on April 17, 1980 that:

1. THE STATE WILL NOT APPROVE THE USE OF HIGH POWER TRIANGLE CABLE ON ANY DBC PROJECTS UNTIL AFTER JANUARY 1, 1981, UNLESS

2. TRIANGLE PWC PROVIDES THE STATE WITH A LIST OF ALL PURCHASORS [*sic*] OF HIGH POWER CABLE FROM MAY 1972 (THE INCEPTION OF THE GREYSTONE CONTRACT) TO DATE. THE STATE WILL CONDUCT A RANDOM AUDIT OF THE BUYERS TO VERIFY THE PERFORMANCE OF THESE CABLES. IF THERE HAS BEEN NO PATTERN OF FAILURES, THE DISQUALIFICATION OF SAID CABLES WILL BE LIFTED. IF THERE IS A PATTERN OF FAILURES, DISQUALIFICATION WILL REMAIN IN EFFECT UNTIL JANUARY 1, 1981.

We stayed the determination pending the appeal, "subject to the proviso that any part of the term of the disqualification will be served should the court affirm the decision under appeal." We now reverse and remand the matter to the Director for reconsideration and the issuance of a new final decision.

On March 24, 1977 the Director notified Triangle in writing that DBC was considering debarring it, *i.e.,* excluding it from contracting, for a period of five years because of alleged violations of *N.J.A.C.* 17:13–8.2(9), (10) and (12). The violations were stated to be:

.. [Y]our failure to provide a manufactured product on a State public works project which was in conformance with the contract specifications and your continuing failure to assume responsibility for all damages incurred for the replacement of the failed materials manufactured and supplied by Triangle PWC, Inc. The materials in question are # 2 5KV and 500 MCM 5KV electrical cable supplied for the Greystone Psychiatric Hospital Electrical Site Utilities Project ....

The debarment proceedings were initiated under *N.J.A.C.* 17:13–8.1 *et seq.*, a regulation then in effect. The causes referred to, contained in subparagraphs 9, 10 and 12 of *N.J.A.C.* 17:13–8.2, related, respectively, to willful failure to perform in accordance with contract specifications or within contractual time limits, a record of failure to perform or unsatisfactory performance in accordance with the terms of a contract and "[a]ny other causes affecting responsibility as a state contractor of such serious and compelling nature as may be determined by the director to warrant debarment . . . ." *N.J.A.C.* 17:13–8.-3(a)(5) mandated that the existence of any of those causes had to be established by evidence which DBC "determines to be clear and convincing in nature."

A hearing was held before a hearing officer appointed by the Director. The hearing officer thereafter issued a lengthy report in which, on the basis of his findings of fact and conclusions of law, he recommended that DBC's case against respondent "should be dismissed with prejudice because of a failure to make out a prima facie case of clear and convincing evidence of manufacturing defects attributable to Respondent." On DBC's claim of newly discovered "concrete" evidence supporting its allegation that Triangle cable was defective, further hearings took place before the same hearing officer. He submitted a supplemental report in which he again concluded that DBC failed to present clear and convincing evidence to substantiate its charges.

The Director declined to accept and adopt the findings and conclusions of the hearing officer. Instead, he issued a letter opinion containing the determination that is the subject matter of this appeal.

In our view, the Director did not approach the problem properly. It is evident that he was heavily influenced by his belief that Triangle should have assumed its "responsibilities" to pay both material and labor costs associated with replacing the cable. He spoke of the cable's failure being "a disaster for the

State of New Jersey." He pointed out that Triangle had agreed under its warranties to replace only the material and had refused to bear the costs of the labor necessary to extract the damaged cable and install replacement cable. He said that "[i]t was on this point that the State moved to suspend Triangle PCW on [*sic*] supplying material on future State jobs," taking the position that "it was entitled to an unlimited warranty on the cable installed at Greystone, not a limited one." To hold the inadequacy of the warranty against Triangle, as the Director appears to have done, was wrong. If the State desired a better warranty, it could have made appropriate provision for it in the contract documents. Moreover, the sufficiency of the Triangle warranty was irrelevant to the debarment issue here involved. It was not among the causes for debarment enumerated in *N.J.A.C.* 17:13–8.2.

The Director noted that the parties agreed at the hearing that the failure might be attributed to one of three factors: improper installation or mechanical damage, defective manufacture or impressed voltage (overloading), especially lightning strikes. He said that it was "quickly conceded" that the failure was not caused by improper installation. He acknowledged and apparently did not contest the hearing officer's inability to find "clear and convincing" evidence in support of the State's contention that the cable was defective. But he added that "[n]either can I find 'clear and convincing' evidence on the part of *Triangle* that failure was due to lightning or that some other external effect overloaded the system." In this regard the Director fell into error, for under the applicable regulation the burden of proving a cause for debarment was on the State. In the absence of clear and convincing proof of such cause, Triangle was not obligated to show why it should not be debarred.

Citing 28 failures that had occurred in two sizes of cable over a span of a year and a half, the Director stated that "the high incidence of failure . . . may not be convincing in the true sense of the word but certainly is 'clear' evidence to me that something went wrong in these particular sizes of cables." But it is

obvious that something was amiss; the purpose of the hearings was to determine what *in fact* went wrong. The point of contention was whether faulty manufacture was the cause. The hearing officer properly rejected a *res ipsa loquitur* approach in concluding that the State had failed to establish the cause by clear and convincing evidence. None of the experts testified that they actually knew the cause of the failure; they could only offer opinions. The Director, nevertheless, concluded that "failure due to manufacturing defects certainly provide [*sic*] more clear evidence as to cause of failure than lightning strikes." His apparent conclusion that the cable failure must have been caused by manufacturing defects demonstrates again the Director's unawareness of the State's burden to prove its charges by clear and convincing evidence.

As a further indication that "there was something defective or inferior in the Triangle product," the Director said, "I have since learned that Ace and Wire Cable Co., the supplier of Triangle cable to Broadway Maintenance Co., Inc., was sued by BMC for the cable failure," and that the case was settled out of court in the amount of $250,000. This reference to the litigation and settlement was manifestly unfair. There was nothing about it in the record before the Director except for an occasional passing reference to the existence of a lawsuit. The Director's decision could be based only upon the record developed by the hearing officer, *N.J.S.A.* 52:14B–10(d), not upon that which he may have ascertained outside the record.

We conclude, for the reasons expressed above, that the matter must be remanded to the Director for reconsideration and the issuance of a new final decision and order. In his review of the record submitted by the hearing officer, he shall be guided by the standard referred to above, namely, that the existence of the alleged causes for debarment must be established by evidence which he determines to be "clear and convincing in nature." *N.J.A.C.* 17:13–8.3(a)(5). If he elects again upon such review to reject the recommended report and to decide the matter adversely to Triangle, his final decision shall include findings of

fact and conclusions of law, separately stated. *N.J.S.A.* 52:14B–10(d). Such findings and conclusions are lacking in the decision under review.

Reversed and remanded for further proceedings consistent with the foregoing. Jurisdiction is not retained.